# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS ALBERTO LOJANO TIGRE,** *Petitioner,* | : | **CIVIL ACTION** |
| | : | **NO. 26-7562** |
| **v.** | : | |
| **J.L. JAMISON, *et al.*,** *Respondents.* | : | |

## ORDER

**AND NOW**, this 14th day of October 2026, upon consideration of Petitioner Luis Alberto Lojano Tigre's, ("Petitioner"), *petition for writ of habeas corpus*, (ECF 1), and Respondent's, (the "Government"), response in opposition, (ECF 3), it is hereby **ORDERED** that the petition for *writ of habeas corpus* is **GRANTED**, as follows:[1]

---

[1] Petitioner Luis Alberto Lojano Tigre is a native of Ecuador who has resided in Upper Darby, Pennsylvania, since approximately 2021. (ECF 1, ¶ 18). It is unknown where or when Petitioner entered the United States, (ECF 3, at 5), but he was not detected or arrested by any border authorities upon entry. (*Id.*). On September 30, 2026, Petitioner was first encountered by Immigration and Customs Enforcement, ("ICE"), when ICE received a call from the Warminster Township Police following a traffic stop in Warminster, Pennsylvania. (*Id.*, at 6). The phone call identified only the driver of the vehicle as the subject of an immigration warrant. (*Id.*). Petitioner was a passenger in the stopped vehicle. (*Id.*). Nonetheless, ICE agents took Petitioner into custody without articulating any reason for doing so, and without first presenting him with a warrant. (ECF 1, ¶ 19). Petitioner avers that his detention violates the Immigration and Nationality Act, ("INA"), his due process rights under the Fifth Amendment of the United States Constitution, and the *Accardi* Doctrine. (*See* ECF 1). As such, Petitioner seeks immediate release, the return of his personal property and documentation, declaratory relief, an award for costs and attorney's fees, alongside an injunction preventing his continued detention. (*Id.* at 20-21).

In its response, the Government contends that Petitioner has been lawfully detained pursuant to 8 U.S.C. § 1226(a) and that the Government has followed the section's requirements. (ECF 3, at 1). The Government argues that Petitioner has failed to exhaust the administrative remedies required to challenge his detention under § 1226(a), *to wit*, attending a bond hearing and appealing the result, if necessary, to the Board of Immigration Appeals, ("BIA"). (*Id.* at 9-12). The Government also argues that, in any event, it has the statutory and discretionary authority to make detention decisions pursuant to § 1226(a) during the pendency of removal proceedings, and that it need not conduct a pre-detention review of a detainee's dangerousness or risk of flight. (*Id.* at 9). Further, the Government argues that Petitioner's right to due process were not violated because it made an individualized present in the United States, and that Petitioner will receive the opportunity to contest his detention through administrative processes. (*Id.* at 15-18). Finally, the Government argues that Petitioner's detention does not violate the *Accardi* doctrine because ICE has the statutory and regulatory authority to detain non-citizens in removal proceedings. (*Id.* at 16).

Specifically, the Government proffers that, after conducting a brief field interview of Petitioner during the traffic stop in Warminster, PA, the responding ICE agents confirmed through a records check

that Petitioner had no legal status to reside in the United States. (*Id.* at 6). The ICE agents arrested Petitioner before an administrative warrant was issued for him. (*See id.*; ECF 1, at 5). The Government argues that, upon arrest, ICE simultaneously placed Petitioner into removal proceedings by the issuance of a Notice to Appear, ("NTA"), charging him as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act, ("INA"), for being present in the United States without being admitted or paroled. (ECF 3, at 6). The Government further argues that, as part of this process, ICE engaged in a custody determination, concluded that Petitioner should be detained, and further that Petitioner requested a hearing before an immigration judge to review the custody determination. (*Id.*). Petitioner is currently detained at the Federal Detention Center in Philadelphia, ("FDC-Philadelphia"), with a custody redetermination hearing scheduled for October 16, 2026, before the Immigration Court in Elizabeth, New Jersey. (*Id.* at 7, 11). However, the Government argues that because of the Order prohibiting them from transferring Petitioner from the FDC, (ECF 2), Petitioner will not be able to attend any future immigration hearing or bond hearing because FDC-Philadelphia does not facilitate bond hearings on behalf of ICE detainees. (ECF 3, at 7). Notably, neither party has referenced any criminal history of Petitioner before or after entering the United States.

After considering the parties' arguments, this Court finds that Petitioner's detention pursuant to § 1226(a) violates the INA. Section 1226(a) provides: "On a warrant issued by the Attorney General, [a non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a). This provision "establishes a discretionary detention framework." *Dos Reis v. McShane*, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026) (citing *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018)); *see also Regalado-Nauta v. Jamison*, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026) ("Detention under Section 1226(a) is discretionary."). Section "1226(a) permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk." *Buele Morocho v. Warden Philadelphia FDC*, 2026 WL 2546223, at *1 (3d Cir. Aug. 28, 2026) (citing 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1236.1(c)(8)). "The statute's implementing regulations" effectuate this intent by "establish[ing] a framework for initial custody determinations and subsequent review by an immigration judge and the [BIA]." *Regalado-Nauta*, 2026 WL 2740528, at *3 (citing 8 C.F.R. § 1236.1(c); 8 C.F.R. § 1236.1(d)(1)). This framework includes "a right to an individualized detention determination and a bond hearing." *Kashranov v. Jamison*, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)). "The initial custody determination requires an individualized determination as to whether the non-citizen is a danger to property or persons and is likely to appear for any future proceeding." *Regalado-Nauta*, 2026 WL 2740528, at *3 (citation modified) (quoting *Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 492-93 (S.D.N.Y. Aug. 13, 2025)).

Here, there is no indication or evidence that the Government conducted any such determination. Rather, the exhibits included with the Government's response show only that DHS alleges Petitioner is not a citizen or national of the United States but is a citizen of Ecuador; Petitioner entered the United States without authorization and without being admitted or paroled; and Petitioner was detained and placed in ICE custody because of his allegedly unlawful residence status. (ECF 3-1, ECF 3-2, ECF 3-3, ECF 3-4). For reasons unknown to the Court, the I-213 form describing DHS's processing of Petitioner is significantly redacted to the point where nearly all of Petitioner's information, likeness, and the details of his processing are omitted. (ECF 3-2). Further, the I-286 "Notice of Custody Determination" form that Petitioner received provides only that Petitioner will be "Detained by the Department of Homeland Security," and offers no rationale for his detention. (ECF 3-4).

Notwithstanding, the Government insists that there has been an individualized determination as to Petitioner's detention because "ICE conducted an individualized review of Petitioner's case, including accurately determining that he was present in the United States without lawful status." (ECF 3, at 9-15). This determination, however, is insufficient to detain Petitioner pursuant to § 1226(a). "Reliance on status

alone amounts to 'a per se determination' that 'comports not with 1226(a), but with [the Government's] desired policy of detention.'" *Dos Reis*, 2026 WL 1746649, at *4 (alteration in original) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026)). The Government's reliance on legal status alone as a "justification for the process Petitioner received . . . is [] not sufficiently individualized for purposes of Section 1226(a), [and] if taken to its logical conclusion, permit[s] ICE to . . . grant itself license to ignore the facts that do not fit its desired outcome," such as the absence of any indication here that Petitioner is dangerous or a flight risk. *See Cajamarca-Janza v. Soto*, 2026 WL 1506777, at *4 (E.D.N.Y. May 29, 2026).

The Government also argues that Petitioner must exhaust administrative remedies prior to challenging the lawfulness of his detention. This argument is unavailing for two reasons. First, Petitioner here seeks *habeas* relief pursuant to 28 U.S.C. § 2241. (ECF 1, ¶ 2). "Section 2241 *habeas* petitioners are ordinarily required to exhaust administrative remedies, but the statute itself contains 'no [explicit] exhaustion requirement.'" *Dos Reis*, 2026 WL 1746649, at *3 (alteration in original) (quoting *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000)). "[W]here exhaustion is not clearly mandated by statute, a futility exception exists." *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003). "The exception is appropriate when the decisionmakers in the administrative process will almost certainly reject petitioner's requested relief." *Ndiaye v. Jamison*, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19, 2025), (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Here, exhaustion is excused because Petitioner challenges his deprivation of liberty as a violation of the Due Process Clause and the exercise of his currently available administrative remedies would be futile. *See Dos Reis*, 2026 WL 1746649, at *3. On September 5, 2025, the Bureau of Immigration Appeals, ("BIA"), issued a precedential decision holding that an immigration judge has no authority to consider a bond request from any individual who entered the United States without admission. *See Alpha Ousmane Diallo v. J.L. Jamison, et al.*, 2026 WL 2547269, at *3 (E.D. Pa. Aug. 28, 2026) (citing *In re Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025)). Because immigration judges are bound by the BIA's holding in *Yajure Hurtado*, they must deny requests for bond hearings from detainees like Petitioner. As such, Petitioner's request for a bond hearing before an immigration judge, and appeal of the inevitable denial to the BIA, will be futile before seeking review in federal court of his detention. *See Ndiaye*, 2025 WL 3229307, at *4.

Second, the bond hearings provided by Section 1226(a) do not retroactively cure the initially unlawful detention of Petitioner. *See Dos Reis*, 2026 WL 1746649, at *3 ("A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding that "a bond hearing before an immigration judge is a 're-determination' of custody — it assumes that a valid custody determination was made in the first instance."). Therefore, the bond hearing scheduled for Petitioner on October 16 will be inadequate to correct his detention. Under these circumstances, this Court finds that no administrative exhaustion is required before Petitioner can challenge the lawfulness of his detention in *habeas* as a violation of the INA. *See Ndiaye*, 2025 WL 3229307, at *4; *Lopez Benitez*, 795 F. Supp. 3d at 497.

As to Petitioner's due process constitutional arguments, this Court also finds that Petitioner's detention violates his Fifth Amendment right to due process. The "Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In the civil immigration detention context, due process requires procedures that are reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Gayle v. Warden Monmouth Cnty. Corr.*

*Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context); *Regalado-Nauta*, 2026 WL 2740528, at *3. As such, Courts applying *Mathews* weigh the following factors:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. Applying the *Mathew*s factors, the *Buele Morocho* court concluded that "detention without bond of noncitizens who have lived in the United States for extended periods of time with no criminal records violates due process." 2026 WL 2546223, at *8-10.

Here, this Court reaches the same conclusion. Indeed, Petitioner holds a critical interest in remaining free from detention, regardless of the length of such detention. *See Regalado-Nauta*, 2026 WL 2740528, at *4 (citing *Zadvydas*, 533 U.S. at 690); *Buele Morocho*, 2026 WL 2546223, at *9 (citations omitted) (recognizing that immigration detention implicates the constitutionally protected interest in avoiding physical restraint). Further, the record reveals no procedures followed by the Government to protect Petitioner from an erroneous deprivation of this interest, including the bond hearing, of right, that he requested. As the *Buele Morocho* Court held, "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." *See Buele Morocho*, 2026 WL 2546223, at *9 (internal citations omitted); *see also Regalado-Nauta*, 2026 WL 2740528, at *4 (finding that Petitioner's "detention risks erroneously depriving him of his rights because [he] has not yet been provided an opportunity for a neutral decisionmaker to make an individualized determination as to whether [Petitioner] poses a flight risk or a danger to the community."). Also, "while the Government has a legitimate interest in preventing the release of dangerous noncitizens and those who fail to appear at future hearings[ — a situation not applicable in this matter —] that interest is not outweighed by the balance of the first and second *Mathews* factors," particularly where the Government has not assessed whether Petitioner is dangerous or will fail to appear at future hearings. *Regalado-Nauta*, 2026 WL 2740528, at *4 (citing *Buele Morocho*, 2026 WL 2546223, at *10). The balance of the *Mathews* factors, in this matter, weigh in favor of finding that Petitioner's detention violates his due process rights.

Petitioner also challenges his detention as a violation of the *Accardi* doctrine. (ECF 1 ¶¶ 68-71). The *Accardi* doctrine holds that government agencies are bound to follow their own rules and internal procedures that regulate the rights and interests of others. *See Montilla v. INS*, 926 F. 2d 162, 166-67 (2d Cir. 1991) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 422 (1942)). An action undertaken by an agency contrary to its regulations is illegal and of no effect. *See Vitarelli v. Seaton*, 359 U.S. 535, 544 (1959). "Courts have consistently found, and this Court agrees, that if a petitioner was arrested without a valid warrant or finding of probable cause, that is a violation of the warrant requirement of 8 U.S.C. § 1226(a) and it renders the petitioner's detention unlawful." *Mena Wassmer v. Field Office Director, ICE, et al.*, 2026 WL 2838433 (E.D. Va. Sept. 17, 2026) (citations omitted); *see also Alberto C. M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a).") (citations omitted); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (finding the government "failed to comply with the requirements of arrest and detention under [§ 1226(a)] by failing to secure a warrant."). In some contexts, courts have held that a violation of the regulations alone does not necessarily warrant relief unless there is a showing of prejudice. *See Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 177 (3d Cir. 2010) (citations omitted) (explaining that "[c]ourts have taken diverse approaches to reconciling the tension between [*Am. Farm Lines v. Black Ball Freight Service*,

1. The Government's detention of Petitioner Luis Alberto Lojano Tigre violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment of the United States Constitution;
2. Because Petitioner Luis Alberto Lojano Tigre is in custody in violation of the law and the Constitution of the United States, Petitioner Luis Alberto Lojano Tigre is to be ***immediately*** released from the Federal Detention Center in Philadelphia, Pennsylvania;
3. The Government is further directed to return to Petitioner Luis Alberto Lojano Tigre any and all funds, forms of identification, and property which may have been seized from him at the time of his arrest on September 30, 2026; and

---

397 U.S. 532 (1970) in which the Supreme Court first required a showing of prejudice] and *Accardi,* some imposing explicit prejudice requirements"). However, where the regulatory violation at issue protects fundamental or statutory rights, no showing of prejudice is required. *See id.*; *see also Rodriguez Romero v. Ladwig*, 827 F.Supp.3d 779, 796 (M.D. La. 2026) (finding that, where the governing regulations are intended to provide due process, prejudice is presumed). This is so because "courts have overwhelmingly ruled that the revocation regulations provide important procedural safeguards and are intended to protect a fundamental right derived from the constitution; *i.e.* liberty." *Rodriguez Romero*, 827 F.Supp.3d at 798.

Petitioner argues that his warrantless arrest and detention violated several government regulations, *to wit*: 8 C.F.R. §§ 236.1(b)(1), (c)(8) and 8 C.F.R. §§ 1236.1(b)(1), (c)(8). First, 8 C.F.R. § 236.1 implements the initial enforcement, arrest, warrant issuance, and primary custody determinations executed by ICE under 8 U.S.C. § 1226(a). 8 C.F.R. §§ 236.1(b)(1), (c)(8). Then, 8 C.F.R. §§ 1236.1 implements the adjudicative authority exercised by immigration judges and the BIA regarding custody, bond redeterminations, and release conditions under 8 U.S.C. § 1226(a). 8 C.F.R. §§ 1236.1(b)(1), (c)(8). In Petitioner's case, the requirement that the Government follow such regulations guards against arbitrary deprivation of his liberty. *Id.* at 800-01. Thus, the Court agrees with the many courts that have found that the relevant regulations afford imperative procedural safeguards to noncitizens such as Petitioner and that failure to comply with those regulations is prejudicial and warrants relief under the *Accardi* doctrine.

As for Petitioner's request for attorney fees and costs, this request is premature and, therefore, denied, without prejudice. Petitioner is granted leave to file a motion for costs and fees pursuant to the Equal Access to Justice Act ("EAJA") within thirty days of the entry of final judgment in this case. *See Michelin v. Warden Moshannon Valley Correctional Center*, 169 F.4th 418, 435-36 (3d Cir. 2026) (holding that a petition for a writ of *habeas corpus* from immigration detention under § 2241 is an EAJA "civil action," entitling petitioners to attorneys' fees and costs if the Government's position was not "substantially justified").

In conclusion, for the reasons set forth, this Court finds that Petitioner's detention violates the INA, Petitioner's constitutional due process rights, and the *Accardi* doctrine. "A court . . . entertaining an application for a writ of *habeas corpus*" is empowered to "dispose of the matter as law and justice require." 28 U.S.C. §§ 2241(a), 2243. "The traditional function of the writ of *habeas corpus* is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Considering the statutory and constitutional law violations set forth herein, this Court finds that the law and justice require Petitioner's immediate release.

4. The Government is directed to certify compliance with the Court's Order by filing such certification on the docket by 5:00 p.m. on October 14, 2026.

The Clerk of Court is **DIRECTED** to mark this case **CLOSED**, upon receipt of the Government's certification.

**BY THE COURT:**

*/s/ Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*